IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Case No. PGW-17-529** |
| **MALIK LARY CARTER** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Malik Lary Carter's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 79. Mr. Carter is currently incarcerated at MDC Brooklyn in New York where he is serving a 108-month imprisonment for Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), and Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Judgment, ECF No. 45. Mr. Carter has been detained (pretrial) and incarcerated in connection with this case since December 1, 2017, *id.* at 2; he was sentenced on August 3, 2018, *see* Sentencing, ECF No. 43. On October 13, 2020, Mr. Carter moved to request that the Court release him in light of the global pandemic because his underlying health conditions—asthma and borderline obesity—make him more vulnerable to COVID-19. The Government opposes Mr. Carter's motion for the reasons explained below. Def.'s Mot. Mem. 1. I have reviewed all the materials[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, Mr. Carter's motion is DENIED.

---

[1] The motion is fully briefed. *See* ECF Nos. 79, 81, 84 and 86.

**BACKGROUND**

On July 26, 2017, Mr. Carter and his co-defendant robbed a pharmacy at gun point. On August 3, 2018, Mr. Carter was sentenced by this Court to a total term of 108 months of imprisonment after he pleaded guilty to the offense. The Court credited time served since December 1, 2017. Judgment, ECF No. 45. Mr. Carter is serving his sentence at MDC Brooklyn in New York, with an expected release date of May 26, 2025. Def.'s Mot. Mem. 4. He has served about one third of his sentence to date. Gov't Resp. 23.

Mr. Carter, who is 24 years old, suffers from asthma and borderline obesity, with a body-mass index ("BMI") that fluctuates in the 29-30 range.  Def.'s Mot. Mem. 1, 3; Gov't Resp. 16. According to the Center for Disease Control's ("CDC") published risk factors for incurring a severe case of COVID-19, obesity, defined as a BMI over 30, can cause an "increased risk for severe illness." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Jan. 19, 2021).  Moderate to severe asthma and being overweight, defined as a BMI over 25 but less than 30, **might** cause an "increased risk for severe illness." Mr. Carter also submits that he suffers from mental health disorders, including anxiety, bipolar disorder, PTSD, and depression. Def's Reply 8. In June 2020, Carter contracted Covid-19 while housed at MDC Brooklyn and has recovered. Def.'s Mot. Mem. 3.

In opposition, the Government asserts that, while Mr. Carter has exhausted administrative remedies, his asthma and BMI do not constitute "extraordinary and compelling reasons" that would make him eligible for a compassionate release. Gov't Resp. 1. The government points out that the Bureau of Prisons ("BOP") has taken action to mitigate the danger of COVID-19 and there is no particularized risk present at MDC Brooklyn where Mr. Carter is incarcerated. Gov't Resp.

11, 18. In addition, the Government contends that Mr. Carter continues to pose a danger to the community. *Id.* at 20.

## DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, Mr. Carter requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.[2] The First Step Act permits a defendant to petition a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the BOP received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.*

**I.      Administrative Exhaustion**

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied because Mr.

---

[2] The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). In 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the court to act on a motion for compassionate release filed by a defendant.

Carter has made the requisite requests for compassionate release to the Warden at his facility. Def. Mot. Mem. 4. As mentioned above, the Government agrees that Mr. Carter has exhausted his administrative remedies, and that the Court has the authority to rule on this motion. Gov't Resp. 1.

## II.     Extraordinary and Compelling Reasons

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). I join with the majority of courts finding that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). As the Fourth Circuit observed, district courts have discretion to independently assess whether circumstances meet the extraordinary and compelling threshold. *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020). More specifically, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citing *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020).[3] However, while not binding, *id.*, the Sentencing Commission's policy statements may provide useful guidance.

The Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 offer guidance here.[4] Section 1B1.13 recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended

---

[3]    *See also United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020).

[4]    The Government, writing before the Fourth Circuit's opinion in *McCoy*, utilized the § 1B1.13 criteria to argue that Mr. Carter does not present extraordinary and compelling reasons. Gov't Resp. 5-10.

in 2018, including the statement that "the defendant is not a danger to the safety of any other person or to the community." The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C).

Mr. Carter asserts that his underlying medical conditions—asthma and borderline obesity, which are exacerbated by his mental health disorders—may put him at higher risk for serious illness as a result of COVID-19. Def's Mot. Mem. 5. Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where a defendant had serious medical problems that placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, No. 13-cr-46-PWG, 2020 WL 4748462, at *4 (D. Md. Aug. 17, 2020) (citing cases in this court and others and the application of multiple conditions). Certainly, the situation regarding COVID-19 is rapidly evolving, and new information about the virus and risk factors must be taken into account, as well as the changing conditions at prison facilities, for better or worse.

The Government argues, however, that Mr. Carter fails to prove extraordinary and compelling circumstances because his medical conditions do not significantly elevate his risk. Gov't Resp. 15-18. Mr. Carter, at 24, is not in a high-risk age group. *See id.* at 16. His asthma places him into a category of people with preexisting conditions that the CDC observes *might* increase his risk of severe illness should he contract COVID-19. *Id.* His borderline obesity is at

---

But as I have repeatedly held, and as the Fourth Circuit affirmed in *McCoy*, the § 1B1.13 categories are not binding in the compassionate release context. *See McCoy*, 981 F.3d at 281-82.

the edge of putting him above the "might be at an increased risk" category to be "at increased risk" of severe illness upon infection.

A defendant's health conditions that constitute a heightened risk of severe illness, including asthma, have been cited when granting compassionate release motions. *See Jennings*, 2020 WL 4748462, at *1 (asthma and Gravas Disease). At the same time, as the Government emphasizes, Mr. Carter's "obesity" is borderline, and there are also multiple cases denying compassionate release to defendants with obesity and a preexisting condition that increased defendants' risk of severe illness. See *United States v. McKay*, No. 18-CR-305-PWG, 2020 WL 7398865 (D. Md. Dec. 17, 2020) (hypertension and borderline obesity); *United States v. Wright*, No. TDC-17-0388, 2020 WL 2571198 (D. Md. May 21, 2020) (diabetes, hypertension, chronic kidney disease, and asthma). The fact that Mr. Carter has contracted COVID-19 while incarcerated also requires consideration, but it is not a dispositive factor. *See United States v. Fletcher*, No. TDC-05-0179-01, 2020 WL 3972142, at *3-4 (D. Md. July 13, 2020) (finding "extraordinary and compelling reasons" when Fletcher, at 65 years old, suffered from diabetes, chronic kidney disease, and hypertension, was housed at the federal prison with the most COVID-19 cases in the nation, and had contracted COVID-19 again or continued to have significant symptoms).

Although the BOP has taken measures to protect inmates from COVID-19, these measures do not eliminate the risks. At the same time, fear that COVID-19 will spread in the facility is not sufficient in itself to demonstrate extraordinary and compelling reasons. Nor am I persuaded that Mr. Carter's asthma, borderline obesity, prior coronavirus infection, and young age combine to demonstrate extraordinary and compelling reasons.

These concerns are further considered in the analysis of the sentencing factors.

**III.  Sentencing Factors**

A finding of "compelling and extraordinary reasons" is a necessary, not sufficient, condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense."

As the Government states, Mr. Carter has committed serious crimes whenever he has not been detained, in addition to his lengthy juvenile criminal history. Gov't Resp. 21. In July 2014, Mr. Carter committed an armed robbery similar to his instant offense, where he was sentenced to 20 years confinement but was released in January 2017. *Id*. at 22. Less than six months after being released, Mr. Carter was arrested after law enforcement officers observed him exiting the driver's seat of a stolen vehicle. *Id.* He was charged with Motor Vehicle/Unlawful Taking and related offenses, but the matter has not been resolved because Mr. Carter was arrested for the instant offense 18 days later. *Id.* In light of his history of using a firearm during violent offenses, I am not encouraged to believe that he presents no danger to the community.

Further, Mr. Carter's sentence of 108 months was fair and consistent with his negotiated plea agreement. Importantly, he has only served about a third of his sentence, which is not a significant portion of his sentence, unlike most of the defendants who were granted compassionate release. *Compare United States v. Jennings*, Crim. No. PWG-13-046, 2020 WL 4748462, at *5 (D. Md. Aug. 17, 2020) (early release of approximately two weeks after serving 94 months in

prison is consistent with the sentencing factors) *with McKay*, 2020 WL 7398865, at *4 (finding it inconsistent with the sentencing factors to release a defendant with a lengthy history of violent crimes who has only served half of his fair sentence).

Considering all of the circumstances, I find that granting release at this time would be inconsistent with the sentencing factors set forth in § 3553(a), even if I did find compelling and extraordinary reasons to warrant a reduction in sentence.

## CONCLUSION

The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Mr. Carter faces based on his asthma and weight in the current climate of surging coronavirus cases. However, I do not find that his combination of asthma, borderline obesity, prior coronavirus infection, and young age combine to demonstrate extraordinary and compelling reasons. And even if I did, I would find that early release would not be consistent with the sentencing factors in 18 U.S.C. § 3553(a). Therefore, Mr. Carter's motion for compassionate release is denied.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 29th day of January, 2021, hereby ORDERED that Mr. Carter's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 79, is DENIED.

                  /S/
                  Paul W. Grimm
                  United States District Judge